**BONDED ARMORED CARRIER, INC.,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS
BOARD,** Respondent.

No. 9595.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 7, 1965.

Decided March 15, 1965.

Barry I. Robinson, Baltimore, Md. (Robert L. Sullivan, Jr., Baltimore, Md., on brief), for petitioner.

Warren M. Davison, Atty., N. L. R. B. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and William J. Avrutis, Atty., N. L. R. B., on brief), for respondent.

Before SOBELOFF and BRYAN, Circuit Judges, and HUTCHESON, District Judge.

STERLING HUTCHESON, District Judge.

This is a petition filed by Bonded Armored Carrier, Inc. to review and set aside an order of the National Labor Relations Board issued against the Company on May 25, 1964 pursuant to Section 10(f) of the National Labor Relations Act.

Petitioner, a Maryland corporation, was founded in 1956 and operated its business at 7518 Harford Road, Baltimore until June 31, 1963 when moved to its present location, 8510 Old Harford Road. It performs armored car service in the transportation of money, securities and other valuables in and about the State of Maryland and neighboring areas.

On May 22, 1963, Truck Drivers and Helpers Local Union No. 355, hereinafter called the Union, filed a petition with the National Labor Relations Board with the view of being certified as the bargaining representative for Petitioner's employees.

On May 25, 1963, Mr. Truman Smith, Petitioner's President, called a meeting of all the employees to be held that evening. Meetings of this type were customarily held once or twice a year and appear to have been called for general policy purposes where circumstances required. This meeting was specifically called for the purpose of announcing to

the employees certain changes that would be made because of the impending move to new quarters and of changes necessitated by the then financial and economic affairs of Petitioner. The meeting lasted approximately 30 to 45 minutes. Among other changes it was announced that the jobs of two employees, Wildberger and Moffitt, were terminated. Shortly thereafter the employment of Harry Classon and Marvin Rogers were terminated due to necessary changes. On October 3, 1963, Walter L. Thomas, an employee, was discharged because of unsatisfactory services.

At the meeting on May 25, 1963, Ralph Vaught was notified that his schedule would be changed.

On June 10, 1963, as a result of its investigation, the Board dismissed the Union's petition seeking certification as bargaining representative on the basis that the unit of employees for which the Union sought to act was inappropriate for collective bargaining purposes. 29 U.S.C. § 159.

On June 13, 1963, the Union filed an unfair labor practice charge against Petitioner alleging that the discharge of Wildberger, Moffitt and Classon were discriminatory. On September 9, 1963, the Board issued a complaint alleging discriminatory discharge of these employees, which Petitioner denied by answer. On October 7, 1963, an additional charge was filed alleging discriminatory discharge of Rogers and Thomas. The latter charge was withdrawn on October 18, 1963 and an amended complaint was filed charging discrimination in relation to Moffitt, Wildberger, Thomas and Vaught.

Following a hearing on November 4, 1963, the Trial Examiner issued his decision on January 10, 1964 finding Petitioner not to have been engaged in the unfair practices alleged and recommending the complaint be dismissed in its entirety.

By its decision and order, the Board set aside the decision of the Trial Examiner except as it related to the termination of the employment of Wildberger and Moffitt.

Specifically, the Board held Petitioner had violated the Act in the discharge of the employee Thomas and in its change in the schedule of employee Vaught.

Accordingly, we are here concerned with only the circumstances surrounding the Company's dealings with these two employees.

*Walter L. Thomas* was employed by Petitioner on August 17, 1961 as driver-guard until his discharge on October 4, 1963. It is shown by the testimony that Thomas was a constant complainer concerning his job assignments, contending that other employees were being given preferences in working schedules and various other grievances such as complaints concerning Petitioner's failure to provide him a new uniform. His records were not properly kept and his work was not satisfactory. From the testimony of Thomas himself, he was responsible for losing a complete manifest on July 3, 1963. On August 13, he lost a bag containing securities. On September 9, he lost a shipment of securities and money. On October 1, he lost a shipment of $2600.00.

It is difficult to understand the reasoning of the Board in its holding that the discharge of this employee was due to Union activity. The Union's petition had been dismissed on June 10, 1963 when it was determined that its certification as bargaining agent for this unit of employees was inappropriate. No suggestion appears concerning any mention of Thomas being called an Union agitator until October 2, which suggestion is seized upon as proof of violation by Petitioner of the Labor Relations Act. That is no more than a suggestion which is flatly denied, nor is it supported by any accompanying circumstances. It was explored before the Trial Examiner who carefully examined the testimony of Thomas and placed no credence on the contention that he was discharged because of Union activity. Surely Petitioner could not be expected to retain in its employ one charged with picking up and

delivering valuable cargoes of cash and securities with such a record as this. Furthermore, the Union complains of transactions occurring months after its unsuccessful effort to become bargaining representative of this group had been rejected by the Board as inappropriate.

While motives of altruism are to be commended, we are left in a condition of conjecture regarding the reason for the zealous prosecution of this complaint by the Union and the final determination of the controversy by the Board. The record fails to suggest an answer.

*Ralph Vaught* had been employed as driver and guard for about three years at the time of the meeting on May 25, 1963. He had taken a course in hair dressing and at the time of the meeting his days off were Friday and Saturday. On those days he was employed as hair dresser. During the course of the announcement concerning job changes and the elimination of some jobs, when addressing Vaught the company official referred to Vaught having been in Salisbury with a Union official and seen on Baltimore street in a white Cadillac. This vehicle seems to have some sort of relation to the Union. Reference was also made to the fact that Vaught was a hair dresser on Friday and Saturday. He was then informed that under the revised program he would be required to work on Friday and Saturday with Tuesday as his day off. This is accepted by the Board as proof that Union activity was the cause of a shift in his job assignment. It is stated in the brief that the effect of the change was to cause Vaught to lose extra income. We find no support in the record for this contention. Vaught testified that such changes of schedule were not unusual. Another employee, Penson, stated at the meeting that he was supposed to be in the Union Cadillac with Vaught but was unable to do so. In reply he was told there would be no change in his work assignment. Vaught made no assertion nor even suggestion that he lost extra earnings. At the time of the hearing before the Trial Examiner, Vaught was employed by the company, had received an increase in salary and expressed his desire to remain as an employee. It is to be borne in mind that the Trial Examiner had the opportunity to hear these witnesses testify in person and to observe their demeanor on the stand. He described Vaught as not an impressive witness.

It is shown by a consideration of the record as a whole that this change in shift occurred simultaneously with five other changes made by Petitioner in the operation of its business. The positions held by Wildberger, Moffitt and Classon were terminated. Rogers was laid off as a result of a reduction in the work force. Finally, there was a change in the headquarters of the Petitioner.

With the exception of the move to new headquarters, all the other changes resulted in charges of unfair labor practices against Petitioner.

 It is our conclusion that the recommendation of the Trial Examiner that the complaint be dismissed in its entirety should have been adopted by the Board.

It is clear that Petitioner was justified in dismissing Thomas. Here was an employee constantly complaining about schedules which he considered unfair to himself. He complained about such items as a new uniform and carried his activities to the length of making night telephone calls to the President of the company and his secretary and calling the bookkeeper to know why other employees got a raise and he did not. Before being discharged he was called in for a discussion with the President concerning the unsatisfactory nature of his work and his constant complaining. At this meeting he promised to do his work, quit making night phone calls to the President and his secretary and quit aggravating other people. On that same day he lost a shipment containing $2600.00. Under those circumstances, no well organized company could be expected to retain him.

 From what has been said concerning Vaught, the action of the Board in requiring him to be restored to his

former working hours and make him whole for any loss of pay as a result of discrimination by payment of a sum of money presumably suffered because of inability to do hair dressing on weekends, is an impractical order. As stated, Vaught is employed by Petitioner and has received increase in his pay. There is no showing of any loss of income concerning hair dressing activities.

The order entered by the Board on May 25, 1964 will be and hereby is vacated and the Petition for Enforcement denied.

Order of Board vacated and petition for enforcement denied.